UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ARCHER SYSTEMS, LLC

       *Interpleader Counterclaim Plaintiff/*
*Counterclaim Defendant*

v.

RAWLINGS & ASSOCIATES PLLC, ET AL.          Civil Action No. 3:23-cv-242-RGJ
       *Interpleader Claimants/ Crossclaim*
*Defendants*

v.

MSPA CLAIMS 1, LLC, ET AL.

       *Interpleader Claimants/ Counterclaimants/*
*Crossclaimants*

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on various motions.  MSPA Claims 1, LLC and MSP

Recovery Claims, Series LLC (collectively, "MSP"), an interpleader claimant, moves to dismiss

Archer Systems, LLC's ("Archer") third amended interpleader complaint.  [DE 111].  MSP also

asserts a counterclaim against Archer [DE 75, Am. Countercl.] and a crossclaim against its fellow

interpleader claimant, Rawlings & Associates, PLLC ("Rawlings & Associates") [DE 76, Am.

Cross-cl.]. [1]  Each party moves to dismiss the claims against it.  [DE 81, Rawlings & Associates

Mot. to Dismiss Am. Cross-cl.; DE 82, Archer Mot. to Dismiss Am. Countercl.].  Additionally,

MSP moves the Court to enter a show cause order regarding whether Rawlings & Associates,

---

[1] Motions to dismiss MSP's original crossclaim and counterclaim [DE 57] remain pending.  [DE 68; DE 69].  MSP has since amended its claims [DE 75; DE 76] and Rawlings and Archer have moved to dismiss the amended complaints.  Accordingly, MSP's original crossclaim and counterclaim complaint [DE 57] is dismissed in light of its amended claims [DE 75; DE 76], and Rawlings' and Archer's corresponding motions to dismiss the original complaint [DE 68; DE 69] are denied as moot.

PLLC and Lowey Dannenberg P.C. (collectively, "Rawlings") [2] are properly named in this action. [DE 124]. Briefing is complete and the motions are ripe. [DE 128; DE 90; DE 100; DE 89; DE 101; DE 114; DE 115; DE 120]. For the reasons below, MSP's motion to dismiss the third amended interpleader complaint [DE 111] is **DENIED**, Archer's motion to dismiss MSP's amended counterclaim complaint [DE 82] is **GRANTED**, Rawlings & Associates' motion to dismiss MSP's amended crossclaim complaint [DE 81] is **GRANTED in part and DENIED in part**, and MSP's motion for a show cause order [DE 124] is **DENIED**.

## I.     BACKGROUND

In a mass tort action there are many steps between final judgment and disbursement of funds to the individual plaintiffs. For example, medical insurers and health plans often place medical liens on plaintiffs' share of funds in order to recover for some medical service provided to them. Such liens must be resolved before settlement monies are paid out to the individual.

The parties in this case are in the business of helping stakeholders navigate this process. Archer facilitates settlement administration on behalf of mass tort plaintiffs and their counsel. [DE 106 at 797]. They act as trustee of the settlement funds and work to identify and resolve liens. [DE 106 at 802]. Other companies, commonly referred to as recovery vendors, work on the other side of the equation, helping the medical insurers and health plans to recover their liens. Rawlings & Associates, PLLC and Lowey Dannenberg P.C. are law firms retained by health plans to pursue recovery from judgments and settlements. [DE 1 at 1]. MSP, a recovery vendor, provides similar services for its medical payor clients. [DE 106 at 801]. Both Rawlings and MSP contract with

---

[2] Because Rawlings & Associates, PLLC and Lowey Dannenberg P.C. are collectively asserting claim to the disputed funds [DE 114 at 876], they are referred to collectively, mirroring the parties' briefing. When Rawlings & Associates, PLLC is individually named, as in MSP's crossclaim, it is referred to as "Rawlings & Associates." When Lowey Dannenberg P.C. is individually named, as in MSP's motion for show cause order, it is referred to as "Lowey Dannenberg."

their clients through Master Recovery Services Retainer Agreements ("MRSRAs").   In turn, Rawlings and MSP contract with Archer, via Private Lien Resolution Program Agreements ("PLRPAs"), to negotiate and resolve their clients' liens on a tort-by-tort basis. [DE 106 at 801].

In this case, a health plan, Emblem[3], entered into a MRSRA with Rawlings on April 8, 2016. [DE 114 at 877].  On behalf of their clients, Rawlings entered into multiple PLRPAs with Archer, covering various mass tort cases. [DE 106 at 801].  Once those cases reached settlement, Rawlings asserted a right to payment under the PLRPAs for the final lien amounts owed to their clients, including Emblem.  [DE 114 at 877].  Archer refused to pay on Emblem's liens, citing competing claims by MSP for the same funds.  [*Id*.].  Archer asserts that both recovery vendors "claim entitlement to what appears to be the exact same funds (i.e., funds for liens as it relates to the same medical provider for the same services performed on the same date)." [DE 106 at 802]. According to Archer, "[e]xcept for exceedingly rare and unusual circumstances, only one insurer or health plan would cover services at a doctor's office, hospital, or other healthcare delivery facility on a particular service date." [*Id*.].

Rawlings initiated this action by suing Archer for breach of its PLRPA, citing the nonpayment of Emblem's claims.  [DE 1].  That action was dismissed for lack of complete diversity. [DE 61].  Archer asserted a Counterclaim/Petition for Interpleader ("Interpleader Complaint") against Rawlings and MSP.  [DE 11].  The Interpleader Complaint has been amended several times, most recently on January 26, 2024.  [DE 106, Third Amended Interpleader Complaint].  MSP now moves to dismiss the Interpleader Complaint [DE 111] and asserts counterclaims against Archer [DE 75] and crossclaims against Rawlings & Associates. [DE 76].

---

[3] Emblem refers to Emblem Health Services Company, LLC, Group Health Incorporated, and Health Insurance Plan of Greater New York (collectively, "Emblem").  [DE 111 at 829].

## II.    STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint. Generally, 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the defendant asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction. *Id.* By contrast, in a factual attack, the defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction, and the court is free to weigh the evidence. *Id.* Plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss under Rule 12(b)(1). *Madison-Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Rule 12(d) provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting the motion to one for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.    ANALYSIS

### A.  MSP's Motion to Dismiss Archer's Interpleader Action [DE 111]

#### 1.  *Interpleader Generally*

"'Interpleader is procedural device which entitles a person holding money or property, concededly belonging at least in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund.'" *Mudd v. Yarbrough*, 786 F. Supp. 2d 1236, 1240 (E.D. Ky. 2011) (quoting *White v. Fed. Deposit Ins. Corp.*, 19 F.3d 249, 251 (5th Cir. 1994)). In the Sixth Circuit the "primary test" for determining when interpleader is appropriate is to

consider "whether the stakeholder legitimately fears multiple vexation directed against a single fund or property," called the "stake." *Id*. (internal quotations and citation omitted).  "[I]t is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be quite tenuous." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed. 2001).

Interpleader actions commonly proceed in two stages.  First, "the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader." *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir.2007) (citing Wright et al., *supra* § 1704).  "The Sixth Circuit's requirement of a 'legitimate' fear of overlapping litigation does not imply review of the merits of the adverse claims, which should instead be reserved for the second-stage of interpleader." *Mudd*, 786 F. Supp. 2d at 1240-41. In the second stage, "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *Id*. This action is in the first stage.

There are two types of interpleader actions in federal court: statutory interpleader under the Federal Interpleader Act, 28 U.S.C. § 1335, and interpleader under Fed. R. Civ. P. 22.  *Id*.  The interpleader statute grants district courts "original jurisdiction of any civil action of interpleader or in the nature of interpleader" if three elements are satisfied.  28 U.S.C. § 1335(a); *see also Sun Life Assur. Co. of Canada v. Thomas*, 735 F.Supp. 730, 731-32 (W.D. Mich. 1990).  First, the amount in controversy must exceed $500.  28 U.S.C. § 1335(a).  Second, there must be two or more adverse claimants to the stake who are of diverse citizenship, as defined by 28 U.S.C. § 1332.  28 U.S.C. § 1335(a)(1).  Third, the stake must be deposited into the Court's registry.  28 U.S.C. § 1335(a)(2).

6

2. *Rule 12(b)(1)[4]*

MSP does not dispute any of the three requirements for subject matter jurisdiction. The amount in controversy is $345,045.05, well above the required $500. [DE 108]. The Court has previously determined that minimum diversity is met. [DE 61, Order on Mot. to Dismiss for Lack of Diversity, at 477 "there is minimal diversity over Archer Systems, LLC's interpleader claim"]. Finally, Archer has deposited the stake into the Court's registry. [DE 108, Second Am. Order Granting Interpleader Deposit, at 818]. Further, Archer has demonstrated that there are disputed claims by adverse claimants to the same funds. [DE 106-1;DE 106-2]; *see also Mudd*, 786 F.Supp. 2d at 1240 (holding the primary test for when interpleader is appropriate is "whether the stakeholder legitimately fears multiple vexation directed against a single fund or property").

Instead, MSP challenges the propriety of Rawlings' claim on the funds. In doing so, it asserts it is making a factual attack on the Court's subject matter jurisdiction. However, all its arguments are aimed at the validity of Rawlings' claims to the disputed funds. MSP itself admits that its arguments amount to a factual dispute. *See* [DE 111 at 830 "This case involves a factual dispute."].

Which entity has a superior claim is the core question of an interpleader action—one that is decided through "normal litigation processes, including pleading, discovery, motions, and trial." *See High Tech. Prods.*, 497 F.3d at 641. MSP may not avail itself of the broader 12(b)(1) standard simply by labeling its attack jurisdictional. Even if the Court did construe its argument as a factual attack on jurisdiction, the Sixth Circuit has held that when "an attack on subject-matter jurisdiction

---

[4] MSP asserts that Rawlings lacks standing to bring this claim. The party that requires standing is the one who brings the interpleader action. *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 417–418 (6th Cir. 1997) (holding that the question of an interpleader claimant's standing is irrelevant to determine whether the Court has subject matter jurisdiction over an interpleader action). Thus, MSP's argument is misguided. Archer is the party which requires standing and, as explained below, they have established standing.

also implicates an element of the cause of action, then the district court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997) (internal quotations and citation omitted)).   Direct attacks on the merits of a claim are subject to the Rule 12(b)(6) standard. Because MSP does not dispute any of the facts establishing jurisdiction and all three statutory requirements have been satisfied, the Court has jurisdiction over this interpleader action pursuant to the Federal Interpleader Act, 28 U.S.C. § 1335.

### 3.   *Rule 12(b)(6)*

MSP cites to multiple exhibits in its motion attacking the plausibility of Archer's interpleader claim.   At the motion to dismiss stage, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting the motion to one for summary judgment. *Bassett*, 528 F.3d at 430.   The only exhibit referred to in the Interpleader Complaint is the PLRPA between Archer and MSP.   [DE 111-4].   Additionally, the Kentucky Secretary of State reports may qualify as public records.   [DE 111-3]; *see Bassett*, 528 F.3d at 430.   None of MSP's other exhibits meet the standard for consideration under Rule 12(d).   Thus, the Court declines to consider them.[5]

First, MSP argues that Rawlings cannot assert a valid claim to the funds because they are law firms, and therefore may represent their clients but may not assert their clients' interests as

---

[5] The Court declines to consider the Emblem Assignment Agreement [DE 111-1], the October 2021 email communication from Emblem's representative to an MSP representative discussing the disputed funds [DE 111-2], and the July 2021 email from Archer's representative to MSP's and Rawlings' representatives [DE 111-5] in the analysis of MSP's motion to dismiss.

their own.  [DE 111 at 831–34].  MSP claims that while it was assigned ownership of a portion of Emblem's claims via a MRSRA, the two law firms had no such agreement with Emblem.  [*Id*. at 834].  Archer names Rawlings as a valid claimant and attaches proof of the law firm's claim to the funds.  [DE 106-1; DE 106-2].  Taking all of Archer's factual allegations as true, it has sufficiently stated a claim for interpleader and identified Rawlings as a claimant.  Any dispute MSP has regarding the validity of Rawlings' claim is an issue of fact more properly raised after the benefit of a fully developed record.

### 4.   *Equitable Doctrines*

MSP also argues that equitable concerns prevent Archer from bringing an interpleader action, namely, the unclean hands doctrine.  [DE 111 at 837].

Interpleader is an equitable remedy.  *High Tech. Prods*., 497 F.3d at 641.  In the first stage of the interpleader proceeding, prior to discharging the plaintiff, a court must determine "whether any equitable concerns prevent the use of interpleader." *Id*.  Once a court decides interpleader is available, "it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead." *Id.*  (quoting Wright et al., *supra*, § 1704).  If an interpleader plaintiff acted "not just negligently, but willfully or in bad faith in creating the conflicting claims, it is not entitled to interpleader." *Lincoln Benefit Life Co. v. Bolton*, No. 1:22-CV-524, 2023 WL 3204695, at *2 (S.D. Ohio May 2, 2023) (citing *Primerica Life Ins. Co. v. Woodall*, 38 F.4th 724, 726–27 (8th Cir. 2022)).

The proper course when an interpleader plaintiff is accused of acting negligently or in bad faith is to allow counterclaims, not to dismiss the interpleader action.  *See Bolton*, 2023 WL 3204695 at *3.  In *Bolton*, an insurer brought an interpleader action after two individuals asserted

beneficiary claims under a life insurance policy.  *Id.* at *1.  The insurer sought an order discharging it from any liability related to the policy, while one of the beneficiaries argued that the insurer could not be discharged under equity because it willfully caused the conflict at issue through its mishandling of the change of beneficiary process.  *Id.* at *2.  Instead of dismissing the interpleader action in the face of these allegations, the court reasoned that the interpleader action should proceed because "it would be contrary to judicial economy and wasteful of the parties [sic] time and resources to require [the claimants] to litigate their claims separately."  *Id.* at *3.

MSP argues that Archer created the dispute over the funds by failing to conduct due diligence regarding the competing claims.  [DE 111 at 837].  If it had, MSP argues, Archer would have come to the conclusion that Rawlings could not assert a plausible claim to the funds because it is a law firm, not a recovery vendor.  [*Id.*].  Because of this failure, Archer should not be permitted to proceed in its equitable interpleader claim.  [*Id.*].  MSP's argument fails on two grounds.

First, a stakeholder's failure to investigate competing claims does not bar it from bringing an interpleader action.  In *Poole*, the court noted:

> There is no requirement in Section 1335 that the party filing a statutory interpleader action perform any kind of investigation, let alone reach a level of investigation or due diligence that satisfies one of the competing claimants. To the contrary, it is precisely the purpose of an interpleader action to remove the holder of the proceeds from the equation and allow a neutral third party to make determinations as to who is actually entitled to payment. Put simply, Congress has made filing an interpleader without further investigation a statutory opportunity for a party that legitimately faces multiple adverse claims directed against a single fund (and thus fears potential double liability resulting from a decision as to which party is the meritorious claimant).

*Jackson Nat'l Life Ins. Co. v. Poole*, No. 3:14-CV-1924, 2015 WL 276632, at *4 (M.D. Tenn. Jan. 22, 2015); *see also Allstate Life Ins. Co. v. Shaw*, No. CV 15-11761, 2016 WL 1640461 (E.D. Mich. Apr. 26, 2016) (holding stakeholder was not obligated to investigate claimants' claims to independently determine which was entitled to the death benefit at issue).  Accordingly, MSP has

not sufficiently alleged that Archer has unclean hands.  Further, a finding of unclean hands requires a party to have engaged in "fraudulent, illegal or unconscionable conduct in connection with the matter in litigation." *Specialty Auto Parts USA, Inc. v. Holley Performance Prods, Inc.*, No. 1:17-CV-147-DJH-LLK, 2024 WL 1427127, at *7 (W.D. Ky. Mar. 27, 2024) (quoting *Mem'l Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 361 (W.D. Ky. 2020) (internal quotation and citation omitted)).  In contrast to the counterclaimant in *Bolton*, MSP fails to allege that Archer acted willfully—much less fraudulently or illegally—in bringing about the competing claims. *Bolton*, 2023 WL 3204695, at *2; *see also Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 371 (6th Cir. 1977) ("(f)raud or unclean hands are not to be lightly inferred") (internal quotation and citation omitted).

Second, even if MSP had sufficiently alleged that Archer had "unclean hands," the proper remedy would not be dismissal of the interpleader action.  *See Bolton*, 2023 WL 3204695, at *2 (declining to discharge stakeholder and allowing counterclaims to proceed concurrently).

### B.  Archer's Motion to Dismiss MSP's Amended Counterclaim [DE 82]

In addition to its motion to dismiss the interpleader action, MSP brings two counterclaims against Archer: one for violation of the Medicare Second Payer statute and one for breach of MSP's PLRPA arising from Archer's failure to release the disputed funds to MSP.  [DE 75, Counterclaim Complaint].  As discussed above, Archer's interpleader action is proper.  The Court now considers Archer's motion to dismiss MSP's counterclaims and whether the interpleader action shields Archer from those counterclaims.

#### 1.  Archer's Shield

Typically, when a claimant brings an independent counterclaim against the stakeholder in an interpleader action, the stakeholder is "kept in the litigation to defend against the counterclaim,

rather than being dismissed." *USAA Life Ins. Co., Inc. v. Space*, No. 3:14-CV-00661-TBR, 2016 WL 1268298 (W.D. Ky. Mar. 31, 2016) (quoting *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264 (3d Cir. 2009) (internal quotations omitted)).   "For that to be true, however, the counterclaim must be independent of the ownership issue that the interpleader action was brought to settle." *Id*. Otherwise, a disinterested stakeholder is shielded "from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 265 (3d Cir. 2009); *see also High Tech. Prods.*, 497 F.3d 637 (affirming district court's decision to discharge interpleader plaintiff of all liability related to the distribution of the property at issue after the first step of interpleader action).   This is consistent with the underlying purpose of the interpleader statute: to protect disinterested stakeholders by forcing "claimants to contest what essentially is a controversy between them without embroiling the stakeholder in the litigation over the merits of the respective claims." Wright et al., *supra*, § 1702.

While case law on this issue in the Sixth Circuit is sparse, two cases illustrate the distinction between shieled and non-shielded claims.  In *Space*, an insured died and both her sister and stepson made claims to her USAA life insurance payout.  2016 WL 1268298, at *1.  USAA interpleaded the two claimants, and the stepson filed a counterclaim against USAA for breach of the life insurance contract.  *Id*. The interpleader claim settled out of court, but the counterclaim remained. *Id*.  USAA sought summary judgment on the counterclaim, arguing that the nature of interpleader actions shielded it from any claims arising directly from its failure to resolve the controversy over the interpleaded funds.  *Id*.  The Court agreed with USAA, holding that interpleader plaintiffs are entitled to judgment as a matter of law for counterclaims that are "indistinguishable from the ultimate issue" of to whom the stake belongs.  *Id*. at *2.  The Court reasoned that the stepson's

counterclaim "concerns USAA's 'failure to resolve its investigation in [their] favor and pay out the life insurance proceeds to [them].'" *Id*. (quoting *Hovis*, 553 F.3d at 264). But "a stakeholder's failure to choose between 'adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty.'" *Id*. (quoting *Hovis*, 553 F.3d at 265).

There are some types of counterclaims, however, from which interpleader plaintiffs are not shielded. In *High Technology Products*, the Sixth Circuit considered an interpleader action brought by the United States after Russia, Canada, and two private companies asserted competing claims to certain isotopes in its custody. *High Tech. Prods.*, 497 F.3d at 640. The district court had discharged the United States from "*any* liability with respect to the isotopes," not just from liability related to their distribution. *Id*. at 642 (emphasis in original). Russia appealed this decision, arguing that the United States was not entitled to discharge from claims regarding damage the isotopes sustained while in its custody. *Id*. at 641.

The Sixth Circuit affirmed the district court's discharge regarding claims related to the distribution or ownership of the isotopes, reasoning that it was "clear" that "that the district court had the authority to issue an order discharging the United States, a disinterested stakeholder in this action, from liability." *Id*. (citing 28 U.S.C. § 2361). But the panel reversed the United States' discharge from liability for claims relating to damage, explaining that they fell outside the scope of permissible discharge in an interpleader action. *Id*. at 642.

Stakeholders are only entitled to discharge for claims about "the issue to be decided in the interpleader action"—in *High Technology Products*, that was the ownership and distribution of the isotopes. *Id*. The damage claims, unlike the claims to ownership, did not subject the United States to fear of "multiple vexation." Thus, the damage claims were not to be resolved via the interpleader action and the district court erred by discharging the United States from liability. *Id*. (citing *State*

13

*Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) ("[O]ur view of interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort.  But interpleader was never intended to perform such a function, to be an all-purpose 'bill of peace.'"))

MSP's Counterclaim against Archer "falls squarely within the zone of claims that the courts have identified as inconsistent with interpleader relief."  *Allstate Life Ins. Co. v. Shaw*, No. CV 15-11761, 2016 WL 1640461 (E.D. Mich. Apr. 26, 2016).  Put another way, it resembles the breach of contract claim in *Space*, not the tort claim in *High Technology Products*.

First, MSP alleges Archer violated the Medicare Second Payer statute by failing to disburse the stake, which consists of primary payments owed to MSP's clients.  [DE 75 at 586].  A detailed foray into the intricacies of Medicare Second Payer claims is unnecessary.  MSP's own words sum up the substance of the alleged violation: "Archer is required to reimburse the MSP for outstanding conditional Medicare payments (plus interest) out of the Settlement Funds. Archer, however, has refused and continues to refuse to reimburse MSP from the Settlement Funds. Therefore, Archer, itself, is liable to MSP." [DE 75 at 587].  The core allegation is that Archer failed to resolve the controversy over the interpleaded funds in MSP's favor—an allegation which is "indistinguishable from the ultimate issue" of the interpleader action.  *Space*, 2016 WL 1268298, at *1.  Thus, it is not independent of the competing claims to ownership and is distinguishable from the tort claims at issue in *High Technology Products*.

Second, MSP alleges that "Archer is in breach of the PLRP Agreements for withholding funds owed to MSP and failing to reimburse MSP for submitted Beneficiaries' claims." [DE 75 at 588]. This too is premised on MSP's contention that Archer's recognition of Rawlings' competing claim and delay in paying the disputed funds to MSP is wrongful.  It is "indistinguishable from the

14

ultimate issue" of the interpleader action, and thus, Archer is shielded from liability. *Space*, 2016 WL 1268298, at *1.   As such, both of MSP's counterclaims are subject to dismissal under Rule 12(b)(6). *See e.g. Shaw*, 2016 WL 1640461, at *5 (dismissing counterclaims against a shielded stakeholder at the motion to dismiss stage).

### C. Rawlings & Associates' Motion to Dismiss MSP's Amended Crossclaim [DE 81]

MSP has asserted an amended crossclaim against Rawlings & Associates, alleging that it tortiously interfered with MSP's contract and business relations by submitting a claim to the disputed funds.  [DE 76].  Rawlings & Associates moves to dismiss the amended crossclaim.  [DE 81].

Crossclaims are authorized under Fed. R. Civ. P. 13(g) as long as "the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action." The Sixth Circuit has directed courts to liberally construe Rule 13.  *See Lasa Per L'Industria Del Marmo Societa v. Alexander*, 414 F.2d 143, 146 (6th Cir. 1969).  As with its counterclaims, the central dispute in the interpleader action forms the basis for MSP's crossclaims.  MSP asks the Court to find that Rawlings & Associates committed tortious interference with contract and business relationship under Kentucky law by asserting a competing claim to the interpleaded funds.  [DE 76 at 597–99].  Thus, the crossclaim is properly raised under Rule 13 and the court will consider if it meets the pleading standard.  *See Space*, 2015 WL 3407323, at *7 (in interpleader action to determine ownership of life insurance proceeds, allowing crossclaims for breach of duty of good faith and improper interference property because "the essential facts that provide the bases for Space's claims are nearly identical, and the same legal theories underlie each").

To state a claim for tortious interference with contract, a plaintiff must plead "(1) the existence of a contract; (2) [the defendant's] knowledge of the contract; (3) that [the defendant] intended to cause a breach of that contract; (4) that [the defendant's] actions did indeed cause a breach; (5) that damages resulted to [the plaintiff]; and (6) that [the defendant] had no privilege or justification to excuse its conduct." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. App. 2012) (citing *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 619 (W.D. Ky. 2009), *aff'd sub nom. Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291 (6th Cir. 2011)).[6]

As to the fourth element of tortious interference (i.e., that Rawlings & Associates' actions did indeed cause a breach of the contract), MSP alleges that Archer's refusal to pay MSP the interpleaded funds is a breach of the following provision of its PLRPA:

> Within sixty (60) days of receipt of [MSP's] claims data and lien amounts (the "Review Period"), Archer shall review [MSP's] claims data and lien amounts and affirm and ratify that the claims included in the liens are related to the case injuries and hence, are reimbursable.

[DE 89 at 679–80]. Rawlings & Associates argues that MSP cannot prove breach of contract or resulting damages because, as explained above, Archer cannot be held liable for breach of the PLRPA contract. While it is correct that Archer is shielded from liability, it does not follow, *ipso facto*, that there is no breach. Whether the contract was breached is an independent question of fact. MSP's allegations must only pass muster under Rule 12(b)(6) at this stage of the proceedings.

MSP has sufficiently alleged that Rawlings & Associates' actions induced Archer's breach of the PLRPA, resulting in damages. MSP alleges that it was entitled to the lien amounts for which it applied. [DE 76 at 597]. It has not been paid. [*Id*. at 598]. Archer's failure to reimburse the liens,

---

[6] Rawlings & Associates argues that MSP must also allege that it acted intentionally and improperly, citing *Bourbon County Joint Planning Comm'n v. Simpson*. 799 S.W.2d 42, 45 (Ky. App. 1990). However, that case does not announce an additional element of the offense. Rather, it clarifies that "malice must be shown, but only in the sense of lack of justification for the interference." *Id*. In other words, the court emphasizes that under the sixth element of the claim, good faith is a legitimate defense. *Id*.

making all reasonable inferences in favor of MSP, amounts to a breach of its agreement. Other courts have similarly allowed crossclaims for tortious interference with contract to proceed in interpleader actions. *See Com. Funding Corp. v. Worldwide Sec. Services Corp.*, 78 Fed. Appx. 905 (4th Cir. 2003) (cross-claimant's tortious interference with contract claim survived motion for summary judgment but party failed to meet burden of proof at bench trial); *Travelers Life & Annuity Co. v. Thomas*, No. CV 09-1891, 2010 WL 11537517, at *6–7 (D. Minn. Mar. 1, 2010) (denying claimant's motion for summary judgment on its cross claim for tortious interference of contract in an interpleader case); *but see U.S. Bank Natl. Assn. v. Triaxx Asset Mgt. LLC*, No. 18 CIV. 4044, 2019 WL 4744220 (S.D.N.Y. Aug. 26, 2019) (dismissing a cross claim for tortious interference with contract because cross-claimant failed to allege malice, a required element under New York law).

Rawlings & Associates also argues that it acted in good faith by asserting claim to the disputed funds. [DE 81 at 628]. MSP alleges that Rawlings & Associates knew that the claims for which it sought reimbursement were actually owned by MSP. [DE 76 at 589]. This amounts to a factual dispute. Presuming all of MSP's factual allegations to be true, it has sufficiently alleged a claim for tortious interference with contract. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

To state a claim for tortious interference with business relations, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy; (2) that [the defendant] was aware of this relationship or expectancy; (3) that [the defendant] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Snow Pallet, Inc*., 367 S.W.3d at 6 (citing *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003)). This analysis turns primarily on motive. *National Collegiate Athletic*

*Ass'n By and Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988). To prevail under this theory of liability, the "party seeking recovery must show malice or some significantly wrongful conduct." *Id*.

MSP fails to plausibly allege any malice or significantly wrongful conduct on the part of Rawlings & Associates.  By MSP's own account, Rawlings & Associates made a claim to the disputed funds under its own agreements with Archer.  [DE 89 at 674–75].  MSP makes only one bare assertion of malice: "As a result of [Rawlings & Associates'] deliberate and wrongful conduct, Archer has wrongfully refused to pay MSP." [DE 76 at 598].  In its response, MSP again fails to address the issue of malice, instead conclusively stating that that "[Rawlings & Associates] has maliciously attempted to recover for MSP-owned claims based on an unfounded and illegitimate business interest . . ." [DE 89 at 684].  MSP has offered no facts from which to infer malice, and "the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  Thus, MSP has failed to state a claim for tortious interference with business relations.

### D.  MSP's Motion for Order to Show Cause [DE 124]

MSP argues that Rawlings is improperly named in this litigation and that their client, Emblem, is the true party in interest.  [DE 111 at 831–34].  As explained above, this was an improper inquiry in the motion to dismiss context because the Court does not probe the merits of each interpleaded claim and takes all allegations in the complaint as true.  *See supra* Part III.A.3. In its show cause motion, MSP recycles the argument as grounds for sanctions. [DE 124 at 937–39].  Rawlings has responded.  [DE 128, Rawlings Resp. to Mot. for Show Cause].

Kentucky Rule of Professional Conduct 3.130 (1.8(i)) prohibits attorneys from "acquir[ing] a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting

for a client. . .[.]" MSP argues that this rule bars Rawlings from asserting an ownership interest in the disputed funds because they are law firms.  [DE 124 at 937].  In response, Rawlings argues that while they do have contractual rights to recover the disputed funds, that interest predates this litigation and is a legitimate contingency fee agreement.  [DE 128 at 953].

It is well established that courts possess inherent authority to impose sanctions on attorneys appearing before them.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.") (internal quotations and citation omitted).  This includes the power to sanction attorneys for violations of a state's ethical rules.  *Republic Servs., Inc. v. Liberty Mut. Ins. Co.*, No. CIVA 03-494 KSF, 2006 WL 3004014, at *4 (E.D. Ky. Oct. 20, 2006) ("A district court has inherent authority to disqualify an attorney as a sanction for professionally unethical conduct.") (internal citation omitted).

MSP alleges that Rawlings violates Kentucky Rule of Professional Conduct 1.8(i) by asserting ownership of the interpleaded funds while litigating this claim on behalf of its client, Emblem.  This argument fails because Rawlings did not acquire an interest in the funds during the pendency of the litigation.  The firms contracted with Emblem for the right to pursue recovery of the disputed funds in 2016—well before initiating this case. [DE 69-1, Rawlings MRSRA at 554].  Rule 1.8(i) is concerned with interest acquired after litigation is initiated.  *See In re Corp. Resource Services, Inc.*, 595 B.R. 434, 443 (S.D.N.Y. 2019) (in a case involving an identical ethics rule, court holds an attorney is not barred from representing a client where his financial interest in the client or transaction involving the client preceded the litigation).  Even if this were not the case, Rule 1.8 contains an express exception for "reasonable contingency fee[s] in a civil case." Ky. R. Prof. Conduct 1.8(i)(2).  Rawlings contracted with its client to be paid a portion of any recovered

funds—known as a contingency fee arrangement.  [DE 69-1 at 554].  Because MSP's motion fails to allege any sanctionable conduct, it is denied.

### IV.    CONCLUSION

For these reasons, **IT IS ORDERED** that:

1) MSP's motion to dismiss the third amended interpleader complaint [DE 111] is **DENIED**;

2) Archer's motion to dismiss the amended counterclaim complaint [DE 82] is **GRANTED** and Archer is **DISCHARGED** of all liability related to the distribution of the disputed funds;

3) Rawlings & Associates' motion to dismiss the amended crossclaim complaint [DE 81] is **GRANTED** in part and **DENIED** in part;

4) MSP's motion for order to show cause [DE 124] is **DENIED**;

5) MSP's original crossclaim and counterclaim complaint [DE 57] is **DISMISSED** in light of its amended complaints;

6) Rawlings' and Archer's motions to dismiss MSP's original crossclaim and counterclaim complaint [DE 68; DE 69] are **DENIED AS MOOT**.

July 30, 2024

Rebecca Grady Jennings, District Judge
United States District Court